UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENGBAO XIAO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEAST BUFFET, INC.,<br>HELEN EMPLOYMENT AGENCY, and<br>DOES 1-25,<br><br>Defendants. | Case No. 2:17-cv-01581-RSM<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Feast Buffet Inc.'s partial Motion for Summary Judgment. Dkt. #39. Plaintiffs Mingfeng Cai, Jinglin Chen, Yue Li, Maohong Lin, Xiangnan Liu, Zhengri Song, Yujie Wang, Pengbo Xiao, Lihong Xu, and Xu Zhao (collectively "Plaintiffs") oppose. Dkt. #44. Defendant Feast Buffet has requested oral argument, but the Court does not feel that oral argument is necessary. Having reviewed the motion, Plaintiffs' response, Defendant's reply, and all documents submitted in support thereof, the Court GRANTS IN PART Defendant's Motion for Summary Judgment.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

Defendant Feast Buffet, Inc. ("Feast Buffet") is a Chinese restaurant located in Renton, Washington. The restaurant's management completes its own bookkeeping and hires Chinese-speaking waitstaff that can communicate with Feast Buffet's owners and managers, who primarily speak Chinese. Dkt. #44-1, Ex. B, Li Dep. 12:4-25. To find Chinese-speaking waitstaff to hire, Feast Buffet's owners relied on employment agencies to seek out potential employees outside the Renton, Washington area. Dkt. #41, Li Decl. ¶3. Feast Buffet hired Plaintiffs, most of whom relocated to Washington from states such as California or Texas. *See, e.g.*, Dkt. #40-1, Ex. A, Cai Dep. 21:20-23; Ex. B, Chen Dep. 15:19-20; Ex. D, Liu Dep. 30:18-25; Ex. E, Song Dep. 35:10.

Feast Buffet offered Plaintiffs at least $3,500 per month in wages and tips, plus free meals and free lodging. Dkt. #41, Li Decl., ¶4. During the interview process, Feast Buffet agreed to compensate at least two plaintiffs for travel costs to relocate to Renton. *Id.*, ¶9. Feast Buffet did not pay its waitstaff hourly wages or overtime compensation—Plaintiffs' income came exclusively from tips. *See, e.g.*, Dkt. #40, Ex. B, Chen Dep. 26:8-12, 37:1-38:16; Ex. D, Liu Dep. 55:5-13. To receive their bi-weekly paychecks, employees were required by Feast Buffet to bring the cash they earned from tips to the front counter and exchange the cash for a paycheck. *See id.*

In addition to completing its own bookkeeping, Feast Buffet relied minimally on written contracts, rules or guidelines to outline the employer-employee relationship. Dkt. #44-1, Ex. J, Def. Interrog. No. 10 at 49. Feast Buffet manager Xiaoling Jiang described his past practice of trashing employees' timecards that recorded the number of hours that waitstaff worked. Dkt. #44-1, Ex. B, Jiang Dep. 44:15-45:17, 57:12-22. To the extent that Plaintiffs signed any

paperwork, Plaintiffs claim they were not sure what they signed, nor the purpose of their signatures. Dkt. #40-1, Ex. D, Liu Dep. 31:17-23; Ex. G, Xu Dep. 46:6-10.

Feast Buffet claims that the restaurant's management genuinely believed that it fully and fairly compensated Plaintiffs and did not willfully violate FLSA wage requirements. Dkt. #41, Li Decl., ¶ 5, 6. Dequn Li, one of Feast Buffet's owners and managers, states that Plaintiffs "seemed satisfied with their substantial compensation," noting that none complained about pay, minimum wages, overtime pay or any pay practice. *Id.* Likewise, he claims that management never received any complaints, warnings or notices during Plaintiffs' employment that Feast Buffet was not complying with FLSA wage requirements. *Id.*

Plaintiffs describe the restaurant's management as enforcing a zero-tolerance policy against complaining about wages, overtime, or rest breaks, wherein waitstaff knew that breaking their silence would result in immediate firing. *See, e.g.*, Dkt. #44-1, Ex. C, Cai Dep. 82:9-23. Plaintiff Zhengri Song claimed that the number of waiters fired for complaining numbered in the teens, and that waitstaff had no way to make a complaint anonymously. *Id.*, Ex. G, Song Dep. 50:15-25.

Most of Plaintiffs state that they remained silent on wage issues out of fear of Feast Buffet firing them. *See, e.g.*, Dkt. #44-2, Chen Decl. ¶5; Dkt. #44-4, Li Decl. ¶5. However, plaintiff Pengbo Xiao claims that (s)he complained once about overtime work and once about time off. *Id.* at Ex. H, Xiao Dep. 41:23-25, 42:1-21. Similarly, Mingfeng Cai complained about working too late into the night. *Id.* at Ex. A, Cai Dep. 15:12-25, 16:1-13. Plaintiffs also allege an incident in which a Chinese-speaking customer asked a waiter if Feast Buffet paid them hourly wages or overtime. When the waiter replied that Feast Buffet only paid them tips, the customer left a tip of twenty-five dollars. Dkt. #40-1, Ex. E, Song Dep. 41:13-25. Plaintiffs

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

claim that Feast Buffet's management brought up this incident in a meeting that night and fired the waiter involved. *Id.* *See also* Dkt. #44-5, Cai Decl. ¶10; Dkt. #44-3, Xu Decl. ¶5. In addition to fear of losing their jobs at Feast Buffet, Plaintiffs also claim that because managers at Feast Buffet knew other restaurant managers in the Renton, Washington area, they worried that complaining to Feast Buffet management would hurt them if they later tried to find work at another Renton restaurant. Dkt. #44, Ex. I, Zhao Dep. 29:5-8.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B. Analysis

Defendants seek dismissal of four of Plaintiffs' claims: (1) FLSA claims for work performed prior to October 24, 2015; (2) state law claims under RCW 49.52.050 and RCW 49.52.070; (3) unjust enrichment; and (4) breach of oral contract.

### 1. Statute of Limitations, Willfulness, and Damages under FLSA

The standard statute of limitations for FLSA overtime claims is two years. 29 U.S.C. § 255(a). If, however, Plaintiffs show a willful violation, the statute of limitations extends to three years. *Id.* Defendants argue there is no evidence on which a jury could find willfulness. Dkt. #44 at 6.

As a preliminary matter, Plaintiffs argue that Defendant Feast Buffet failed to sufficiently plead an affirmative defense under FLSA's statute of limitations period. Dkt. #44 at 6. Defendant Feast Buffet pleaded the FLSA's two-year statute of limitations in its Answer with both a general citation to "defenses, protections, and limitations of the Fair Labor Standards Act," Dkt. #26 at 10, ¶2, as well as specific responses denying Plaintiffs' willfulness allegations. *Id.* at 4, 5, 7, 9, ¶¶19, 29, 47, 65, 68.

Federal Rule of Civil Procedure 8 requires a party to "affirmatively state any avoidance or affirmative defense" in its responsive pleading. Fed. R. Civ. P. 8(c)(1). Although claims of relief must satisfy the *Iqbal/Twombly* plausibility standard, the Ninth Circuit has declined to extend this higher standard of pleading to affirmative defenses. *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1274 (3d ed.1998)). *See also Does 1-10 v. Univ. of Washington*, No. C16-1212JLR, 2018 WL 3475377, at *2 (W.D. Wash. July 19, 2018). An affirmative defense must merely describe the affirmative defense in "general terms," *id.* (citing

*Kohler*, 779 F.3d at 1019), and provide the plaintiff with "fair notice" of the defense asserted. *California Expanded Metal Prod. Co. v. Klein*, No. C18-0659 JLR, 2018 WL 6249793, at *3 (W.D. Wash. Nov. 29, 2018) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). The Court finds that the general and specific pleadings contained in Defendant's Answer sufficiently put Plaintiffs on notice of its affirmative FLSA defense regarding willfulness of any violations and therefore satisfy this lower pleading standard.

Next, we proceed to Defendant's substantive argument. Defendants argue that Feast Buffet management did not willfully violate the FLSA. Dkt. #39 at 6. For that reason, Defendants contend, any claims by Plaintiffs that accrued more than two years prior to the filing of this complaint are outside the statute of limitations period and must be dismissed as not timely filed. Because Plaintiffs filed this action on October 24, 2017, the statutory look-back period under the FLSA will commence on either October 24, 2015, or October 24, 2014, depending on the issue of willfulness. Only three of the ten plaintiffs—Xiangnan Liu, Pengbo Xiao, and Xu Zhao—were employed by Defendant earlier than October 24, 2015 and would be affected by this distinction. Dkt. #39 at 5.

Willfulness requires knowledge or reckless disregard of a FLSA violation. *Alvarez v. Ibp, Inc.*, 399 F.3d 894, 909 (9th Cir. 2003). Here, Plaintiffs have introduced evidence of Feast Buffet's practice of forbidding employees from telling restaurant patrons that waitstaff were not paid hourly wages or overtime compensation and punishing any employees who broke this rule. Dkt. #44-3, Xu Decl. at ¶5; Dkt. #44-5, Cai Decl. at ¶10; Dkt. #44-8, Zhao Decl. at ¶5; Dkt. #44-9, Xiao Decl. at ¶4. Several plaintiffs allege an incident where a waiter, responding to a customer's inquiry about their pay, informed the customer that Feast Buffet only paid its waitstaff in tips without hourly wages or overtime, and was fired that night by management.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

Dkt. #40-1, Ex. E, Song Dep. 41:13-25.; Dkt. #44-5, Cai Decl., ¶10; 44-3, Xu Decl. at ¶5. Feast Buffet also contends that its management "had not received any complaints, warnings or notices during Plaintiffs' employment that Feast Buffet might not be complying with FLSA wage requirements." Dkt. #41, Li Decl. ¶ 6. Plaintiffs, on the other hand, claim that anyone who complained to management about Defendant's pay practices was promptly fired. *See, e.g.*, Dkt. #44-1, Ex. C, Cai Dep. 82:9-23; Ex. D, Chen Dep. 32:3-10. Claims that Feast Buffet has sought to shield its labor practices from public view while internally suppressing any complaints about wages and hours raises a sufficient factual dispute as to whether Defendant genuinely believed its practices satisfied FLSA's wage and hour requirements.

Furthermore, Feast Buffet has admitted to wage and hour disputes raised by other former employees. Qiang Chen allegedly worked as a waiter from February 2016 to mid-year 2017 and, after hiring legal counsel, required Feast Buffet to pay him what—in Defendant's own words— "he should have got during the time he worked for us." Dkt. #44-1, Ex. A, Jiang Dep. 32:1-35:5. Feast Buffet has also stated that it required several former employees—Chenxia He, Jian Nu and Pan Zhu—to sign confidentiality statements. *Id.* at 35:22–37:17. The fact that Feast Buffet has been subject to similar labor law disputes and has secured confidentiality statements from former employees likewise raises a factual dispute as to Feast Buffet's genuine belief that its practices were lawful.

Viewing the evidence in the light most favorable to Plaintiffs, a jury could conclude that Feast Buffet knowingly or recklessly violated FLSA. Accordingly, this Court finds that the issue of willfulness is an issue of material fact to be determined at trial and denies Defendant's motion for summary judgment on the timeliness of Plaintiffs' FLSA claims.

## 2. Liability under Washington State Wage and Hour Laws

### a. Willful and with the intent to deprive

Under Washington law, an employer who "[w]illfully and with intent to deprive the employee of any part of his wages," withholds wages "shall be guilty of a misdemeanor." RCW 49.52.050(2). The employer who violates this statute "shall be liable in a civil action by the aggrieved employee" for twice the amount of the wages withheld in addition to attorney's fees and costs. RCW 49.52.070. The "critical determination" in a case alleging willful withholding of wages is whether the employer's failure to pay wages was willful. *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wash.App. 52, 78–79, 199 P.3d 991 (2008). Courts find that withholding of wages is willful "when it is the result of a knowing and intentional action and *not the result of a bona fide dispute*." *Lillig v. Becton–Dickinson,* 105 Wash.2d 653, 659, 717 P.2d 1371 (1986) (emphasis added). "A bona fide dispute is one that is 'fairly debatable.'" *Duncan,* 148 Wash.App. at 79, 199 P.3d 991 (quoting *Schilling v. Raido Holdings, Inc.,* 136 Wash.2d 152, 161, 961 P.2d 371 (1998)). An employer's withholding of wages does not fall within the operation of RCW 49.52.050(2) and 49.52.070 if the employer holds "a genuine belief that he is not obligated to pay certain wages . . . ." *Ebling v. Gove's Cove, Inc.,* 34 Wash.App. 495, 500, 663 P.2d 132 (1983). The question of willfulness is a question of fact. *Schilling,* 136 Wash.2d at 160, 961 P.2d 371.

Here, Feast Buffet argues that it had a bona fide dispute with Plaintiffs, because it held a "genuine belief" that it was not obligated to pay Plaintiffs the contested wages. Dkt. #39 at 11. However, as discussed above with respect to the willfulness of Feast Buffet's FLSA violations, Plaintiffs have offered evidence sufficient to raise a genuine issue of fact as to whether Defendant acted willfully in withholding Plaintiffs' wages. Specifically, Plaintiffs' claims that

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Feast Buffet sought to hide its wage violations from public view and to suppress waitstaff's complaints, in addition to claims that other former Feast Buffet employees took legal action, are sufficient to raise a material factual dispute as to Defendant's "genuine belief" that it was not obligated to pay hourly wages. Therefore, the Court will not grant summary judgment on this issue.

      b. **Knowing Submission to State Law Violations**

The benefits of RCW 49.52.070 are not available where the employee "knowingly submitted" to the employer's violations. RWC 49.52.070. Here, Feast Buffet asserts that "Plaintiffs' purported claims under Chapter 49.52 RCW are barred in whole or in part because Plaintiffs knowingly submitted to some or all of the alleged violations." Dkt. #39 at 11.

A person knowingly submits to this withholding of wages when he or she "deliberately and intentionally deferred to [the employer] the decision of whether [the wages] would ever be paid." *Chelius v. Questar Microsystems, Inc.*, 107 Wn. App. 678, 682 (2001). An employee who agrees to unpaid wages because they felt pressure from the employer nonetheless "knowingly submitted" to the employer's violation. *Coulombe v. Total Renal Care Holdings, Inc.*, No. C06-504JLR, 2006 WL 3345193, at *3 (W.D. Wash. Nov. 16, 2006) (evidence that employee "felt pressure" from employer does not bear on whether employee "deliberately and intentionally" released his stock options). However, claims that employees complained or issued requests to management may raise a sufficient factual dispute to survive summary judgment. *See Durand v. HIMC Corp.*, 151 Wn. App. 818, 837 (2009) (even as plaintiffs continued working and accepting lower wages, their requests or complaints raised sufficient issues of fact regarding whether they knowingly submitted to non-payment).

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Feast Buffet argues that Plaintiffs never complained about compensation nor provided any other indication that they expected additional wages. Dkt. #39 at 11–12. Plaintiffs' declarations and deposition testimony explain that fear of losing their jobs deterred them from complaining, given the number of times they saw management fire complaining waitstaff. *See, e.g.*, Dkt. #40-1, Ex. C, Yue Li Dep. 26:3-8. Despite their silence, Plaintiffs remain adamant that they "never consented" to Feast Buffet's practices. Dkt. #44-2, Chen Decl. ¶ 7; Dkt. # 44-3, Xu Decl. ¶ 10, Dkt. #44-4, Lin Decl. ¶ 9, Dkt. #44-5, Cai Decl. ¶ 11; Dkt. #44-6, Xiao Decl. ¶ 7; Dkt. #44-7, Liu Decl. ¶9; Dkt. #44-8, Zhao Decl. ¶ 10; Dkt. #44-9, Wang Decl. ¶7; Dkt. #44-10, Song Decl. ¶7; Dkt. #44-11, Li Decl. ¶ 9. Moreover, Plaintiff Pengbo Xiao claims that (s)he complained several times about not being paid all the overtime wages (s)he earned. Dkt. #40-1, Ex. H, Xiao Dep. 41:23-25, 42:1-21. These assertions, combined with Plaintiffs' claims that numerous other waitstaff complained about their hours and wages and were immediately fired, run counter to Defendant's claims that Plaintiffs seemed satisfied with their compensation and provided no indication that they expected more money. Considering the facts in the light most favorable to Plaintiffs, there is a genuine issue of fact of whether Plaintiffs "knowingly submitted" to Defendant's wage and hour violations.

Defendants also argue that RCW 49.52.070 does not apply here, given that the statute only applies to wages—not tips. Yet an amount of money given to employees "regularly so as to create an expectation that it will continue . . . may be considered a wage" for the purposes of RCW 49.52.050 and RCW 49.52.070. *LaCoursiere v. CamWest Dev., Inc.*, 172 Wash. App. 142, 150, 289 P.3d 683, 688 (2012), *aff'd,* 181 Wash. 2d 734, 339 P.3d 963 (2014) (citing *Byrne v. Courtesy Ford, Inc.*, 108 Wash.App. 683, 690–91, 32 P.3d 307 (2001)). Here, both parties acknowledge that Plaintiffs' tips comprised their bi-weekly paycheck, since Feast Buffet's

management required them to regularly exchange the cash for a paycheck. Accordingly, a reasonable person could find that Plaintiffs' cash acquired from tips falls within the meaning of "wages" under RCW 49.52.050 and RCW 49.52.070.

For these reasons, Defendant's Motion for Summary Judgment on Plaintiffs' claims under RCW 49.52.050 and RCW 49.52.070 is denied.

### 3. Unjust Enrichment

Plaintiffs claim that Defendants were unjustly enriched when they failed to reimburse Plaintiffs for "travel expenses and other costs" Plaintiffs incurred while working at Feast Buffet. Dkt. #1 at ¶54. The broad language of "other costs" encompasses several types of costs described in Plaintiffs' declarations, including out-of-pocket expenses for work uniforms, credit card transaction fees, and customer dine-and-dashes (i.e., when patrons leave the restaurant without paying). *See, e.g.*, Dkt. # 44-2, Chen Decl. ¶¶ 5, 6; Dkt. #44-3, Xu Decl. ¶¶ 7–9; Dkt. #44-4, Lin Decl. ¶¶ 5, 6; Dkt. #44-5, Cai Decl. ¶¶ 5, 6. Yet because Plaintiffs' Opposition specifies its claim for unjust enrichment claim as "costs and expenses for travel expenses and/or costs for customers who 'dined and dashed' without paying", Dkt. #44 at 8, the Court will focus its review on travel expenses and dine-and-dash costs for Plaintiffs' unjust enrichment claim.

Several plaintiffs, including Lihong Xu and Zhengri Song, claim that Feast Buffet promised over the phone to reimburse them for a one-way plane ticket after three months of working at the restaurant. They claim that Feast Buffet promised that after six months of work, it would reimburse their roundtrip ticket. Feast Buffet counters that only two plaintiffs, [Xiangnan] Liu and [Pengbo] Xiao, alleged that Feast Buffet orally promised reimbursement for travel expenses, Dkt. #39 at 8, and both Liu and Xiao confirmed during their depositions that Defendant ultimately paid those costs. Dkt. #40-1, Ex. D, Liu Dep 30:18-25; Ex. H, Xiao Dep.

20:13-25, 21:1-20.  With respect to costs for dine-and-dash customers, Plaintiffs claim that whenever a customer would eat and leave without paying the bill, i.e. "dine-and-dash," Feast Buffet required waitstaff to pay the bill.  These bills allegedly amounted up to $200 or $300. *See, e.g.*, Dkt. # 44-2, Chen Decl. ¶ 7; Dkt. #44-3, Xu Decl. ¶7; Dkt. #44-4, Lin Decl. ¶6; Dkt. #44-8, Zhao Decl. ¶7.

Under Washington law, "[u]njust enrichment occurs when one retains money or benefits which in justice and equity belong to another." *Bailie Communications v. Trend Business Sys.*, 61 Wash.App. 151, 160, 810 P.2d 12 (1991).  The three elements required for an unjust enrichment claim are (1) a benefit conferred on one party by another; (2) appreciation and knowledge of the benefit by the party receiving it; and (3) acceptance of the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *See, e.g., Dragt v. Dragt/DeTray, LLC,* 139 Wash. App. 560, 576, 161 P.3d 473 (2007).

Feast Buffet argues that summary judgment is appropriate because Plaintiffs have failed to identify expenses they incurred while working for Defendant for which they were allegedly owed reimbursement.  Specifically, Feast Buffet argues that Plaintiffs cannot show they were unjustly enriched because there were no written contracts requiring reimbursement of any expenses or costs.  Dkt. #39 at 7.  Yet unjust enrichment is "the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (emphasis added).  Where a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply. *See Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F.Supp. 3d 1283,

1295–96 (E.D. Wash. 2014). This is precisely the case here, where the employer-employee relationship was not covered by written agreements and was communicated orally.

Nevertheless, unjust enrichment requires that a defendant received a right of benefit that *belonged to the plaintiff*. *BOFI Fed. Bank v. Advance Funding LLC*, No. 14-CV-00484-BJR, 2015 WL 5008860, at *2 (W.D. Wash. Aug. 20, 2015) (citing *Young v. Young*, 164 Wash.2d 477, 484 (2008) (emphasis added). Like the plaintiffs in *BOFI Fed. Bank*, Plaintiffs here never possessed any right to the cost of a plane ticket—rather, the alleged promise of reimbursement was used as an incentive for Plaintiffs to accept a job with Feast Buffet and relocate to Washington. Viewing the facts in the light most favorable to Plaintiffs, even if Defendants orally promised to reimburse them the cost of their plane tickets, Plaintiffs' claim over these costs are merely "an inchoate right based on unenforceable agreement." *BOFI Fed. Bank*, 015 WL 5008860, at *2. Plaintiffs have not made a sufficient showing of the benefit they conferred on Defendants in order to survive summary judgment.

This leaves Plaintiffs' second claim for unjust enrichment for costs of customer walkouts. Washington state law only authorizes employers to deduct wages from an employee's paycheck "[f]or any cash shortage, walkout (failure of customer to pay), breakage, or loss of equipment, if it can be shown that the shortage, walkout, breakage or loss *was caused by a dishonest or willful act of the employee*." Wash. Admin. Code 296-126-025(3)(c) (emphasis added). Secondly, deductions from an employee's wages for customer walkouts are not allowed *during an on-going employment relationship* and may only be deducted from the final paycheck. *See id.* Plaintiffs' claims that Defendant required waitstaff to pay Feast Buffet for customer walkouts therefore raise a sufficient factual dispute that (1) Plaintiffs conferred a benefit on Defendant; (2) Defendant knew of the benefit conferred, since they required

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

payments for walkouts; and (3) Defendant accepted the benefit under circumstances that make it inequitable for it to retain the payments. Remaining issues such as whether Defendants deducted the cost of walkouts from Plaintiffs' during the employee relationship are factual questions that are properly reserved for trial.

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to reimbursement for travel expenses, but reserves the issue of costs for customer walkouts for trial.

4. **Breach of Oral Contract**

As an alternative to claims under unjust enrichment, Plaintiffs allege breach of oral contract to recover costs incurred while working for Feast Buffet, including travel expenses. Dkt. #1, Compl. ¶¶55-58. Feast Buffet moves for summary judgment on Plaintiffs' breach of oral contract claim on the basis that Plaintiffs did not oppose Feast Buffet's motion on the oral contract claim. Dkt. #45 at 7.

A party's failure to properly address another party's assertion warrants summary judgment if a court finds that the movant is entitled to it. Fed. R. Civ. P. 56(e)(3). As the nonmoving party, Plaintiffs bear the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Fed. R. Civ. P. 56(a)). Therefore, if the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Vatrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). The Court will review the facts alleged by Plaintiffs to determine if they have identified, with reasonable particularity, sufficient evidence to preclude this claim from summary judgment.

In Washington, "[a] contract may be oral as well as written, and a contract may be implied in fact with its existence depending on some act or conduct of the party sought to be charged." *Hoglund v. Meeks,* 139 Wash.App. 854, 870–71, 170 P.3d 37 (2007) (internal citations omitted). In the absence of a written contract, an implied contract exists when parties make "an agreement depending for its existence on some act or conduct of party sought to be charged and arising by implication from circumstances which, according to common understanding, show mutual intention on part of parties to contract with each other." *Johnson v. Nasi*, 50 Wash. 2d 87, 91, 309 P.2d 380, 382 (1957). The requirement that both parties show "mutual intention" to contract with each other "may be deduced from the circumstances, including the ordinary course of dealings between the parties or a common understanding within a commercial setting." *Meeks,* 139 Wash.App. at 870–71, 170 P.3d 37 (2007). *See also Jacob's Meadow Owners Ass'n,* 139 Wash.App. 743, 765, 162 P.3d 1153 (2007).

Here, Plaintiffs have not produced sufficient evidence to raise a genuine issue of fact as to whether parties manifested mutual assent to form a contract. Plaintiffs' claims are limited to their own declarations, wherein they claim that Feast Buffet promised to reimburse Plaintiffs for travel expenses during the interview process and failed to do so. Dkt. #44-3, ¶8 ("When I was being interviewed to work at Feast Buffet, Feast Buffet agreed to reimburse me for my travel expenses. Our boss promised to reimburse me and my husband for travel expenses. Neither one of us was ever reimbursed."). *See also* Dkt. #44-8, ¶8; Dkt. #44-10, ¶7 (citing promised reimbursement for travel). Plaintiffs have not provided receipts or other evidence indicating the date or amount of the plane tickets. Moreover, they have failed to offer evidence demonstrating Defendant's "mutual intention" to contract through these phone conversations. The Court therefore dismisses Plaintiffs' claims for breach of oral contract.

## III. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Feast Buffet's Motion for Summary Judgment, Dkt. #39, is GRANTED IN PART for (1) Plaintiffs' unjust enrichment claims relating to travel costs; and (2) breach of oral contract. The remainder of Defendant's Motion is DENIED.

DATED this 15 day of May 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE